## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CHEYENNE JOHNSON,

     Plaintiff,

                                Case No.: 8:23-cv-02760-MSS-JSS

v.

                                JURY TRIAL DEMANDED

AUTO PARTNERS I, LLC
and AUTO PARTNERS IV, LLC,

     Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, CHEYENNE JOHNSON ("Plaintiff" or "Ms. Johnson"), by and through her undersigned counsel, hereby complains of Defendants, AUTO PARTNERS I, LLC ("Defendant Auto Partners I") and AUTO PARTNERS IV, LLC ("Defendant Auto Partners IV") (collectively, the "Defendants"), and alleges as follows:

### INTRODUCTION

1.     This case involves a pregnant woman who was discriminated against and unlawfully terminated by her employer under the guise of a business reorganization.

2.     Ms. Johnson brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq*. ("ERISA").

1

3.     Ms. Johnson seeks monetary relief to redress the Defendants' unlawful employment practices in violation of Title VII and ERISA. Additionally, this action seeks to redress Defendants' deprivation of Ms. Johnson's personal dignity and her civil right to pursue equal employment opportunities.

## PARTIES

4.     Plaintiff is an individual female residing in the State of Florida, who was pregnant at the time of her termination.

5.     Defendant Auto Partners I is a Florida Limited Liability Company, with its principal place of business located at 1000 U.S. Highway 1, Vero Beach, Florida 32960.

6.     Defendant Auto Partners I operates car dealerships and does business under the name "Dyer Chevrolet."

7.     Defendant Auto Partners IV is a Florida Limited Liability Company registered in the State of Florida, with its principal place of business located at 23280 Highway 27, Lake Wales, Florida 33859.

8.     Defendant Auto Partners IV operates car dealerships and does business under the names "Dyer Kia" and "Dyer Kia Lake Wales."

9.     Upon information and belief, Defendant Auto Partners I and Defendant Auto Partners IV were the Plaintiff's joint and/or sole employer.

10.     The exact number of employees of Defendants is unknown, but upon information and belief, there are well more than the statutory minimum under Title VII.

11.     Defendants are an "employer" within the meaning of 42 U.S.C. § 2000e(b).

12.     Defendants are an "employer" within the meaning of 29 U.S.C. § 1002(5).

## JURISDICTION AND VENUE

13.     This Court has jurisdiction over this matter pursuant 28 U.S.C. § 1331. This action is authorized and instituted pursuant to 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 1132(a)(3).

14.     Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Florida. A substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PREREQUISITES

15.     Plaintiff has complied with all administrative requirements.

16.     On or about August 19, 2022, Plaintiff timely filed a charge of discrimination (Charge No. 510-2022-07469) against Defendant Auto Partners I with the U.S. Equal Employment Opportunity Commission ("EEOC").

17.     Plaintiff was unable to ascertain Defendant Auto Partners IV as a proper named party in her charge of discrimination because Defendant Auto Partners I and Defendant Auto Partners IV share an identity of interest and both conduct business as "Dyer Auto Group."

18.     By means of example, despite Plaintiff naming Defendant Auto Partners I in her charge of discrimination, Defendant Auto Partners IV provided the position statement to the EEOC and alleged that Defendant Auto Partners IV was Ms. Johnson's employer.

19.     Defendant Auto Partners IV received adequate notice of Plaintiff's EEOC charge and was not prejudiced by Plaintiff's naming error.

20.     On or about October 19, 2023, the EEOC issued Plaintiff's Notice of Right to Sue against Defendant Auto Partners I.

21.     Plaintiff is timely commencing this action within ninety (90) days of receipt of the Notice of Right to Sue.

## FACTUAL ALLEGATIONS

22.     In or around March of 2022, Ms. Johnson received an unsolicited telephone call from Ryan Pill ("Pill"), an individual male employed by Defendants as Internet Sales Manager.

4

23.     Pill had received Ms. Johnson's contact information from a friend of Ms. Johnson and contacted Ms. Johnson to recruit her to come work for Defendants.

24.     Specifically, Pill informed Ms. Johnson that Defendants were looking for employees to fill Business Development Coordinator Internet Sales ("BDC Internet Sales") positions.

25.     Pill also informed Ms. Johnson that the BDC Internet Sales positions were fully remote.

26.     Ms. Johnson was four months pregnant at the time and was hesitant to change jobs.

27.     Ms. Johnson continued to exchange text messages regarding the position with Pill for approximately a week and a half.

28.     Pill gave Ms. Johnson assurances of the compensation structure and health benefits offered as part of the position.

29.     Ms. Johnson saw the position as a valuable career opportunity and submitted an application for the role.

30.     On or around March 22, 2022, Ms. Johnson was interviewed for the position by Pill; Bobby Ruis ("Ruis"), an individual male employed by Defendants as Sales Manager; Corey Clough ("Clough"), an individual male employed by Defendants as Sales Manager; and Denny Hodges ("Hodges), an individual male employed by Defendant as Internet Sales Director.

31.     On or around March 23, 2022, Pill offered Ms. Johnson an on-site BDC Internet Sales Position, rather than the remote position Pill had previously discussed with Ms. Johnson.

32.     Ms. Johnson raised this issue with Pill immediately, as she had specifically applied for the position because it was 100% remote.

33.     The remote work aspect of the position was extremely important to Ms. Johnson due to her pregnancy and the fact that she lived more than an hour away from Defendants' work location.

34.     In response to Ms. Johnson raising these concerns, Pill stated he would need to speak with Hodges.

35.     Shortly thereafter, Pill called Ms. Johnson back and informed Ms. Johnson that she would be given a fully remote position closer to her expected due date. Pill also stated that Ms. Johnson would be fully remote after her return from maternity leave.

36.     Pill assured Ms. Johnson of these accommodations and that Hodges had approved them.

37.     Based on Pill's representations, Ms. Johnson accepted the job offer. Ms. Johnson understood the offer to be a full-time position, which included a base salary, commission structure, and employment benefits, such as health insurance.

38.     On or around March 31, 2022, Ms. Johnson reported to Defendants' work location to sign her employment documents and receive Defendants' employment policies.

39.     Ms. Johnson was supervised by Pill and Hodges. Pill and Hodges had supervisory authority over Ms. Johnson, including the power to hire, fire, demote, and promote Ms. Johnson.

40.     Per Defendants' employment policies, Ms. Johnson was entitled to full health insurance benefits sixty (60) days from the start of her employment.

41.     On or around April 1, 2022, Ms. Johnson began working for Defendants.

42.     During her employment with Defendants, Ms. Johnson had a record of positive performance.

43.     Several weeks after starting her position, Ms. Johnson was approached by Pill and Hodges.

44.     Pill and Hodges asked Ms. Johnson to switch from a full-time, W-2 employee, to a commission-only, 1099 independent contractor.

45.     Defendants intended to classify Ms. Johnson as an independent contractor, despite the lack of any material change in Ms. Johnson's employment relationship with Defendants.

46. In an effort to coerce Ms. Johnson, Pill and Hodges offered to allow Ms. Johnson to work remotely immediately, but only if she agreed to be deemed a 1099 independent contractor.

47. Ms. Johnson declined the offer and informed Pill and Hodges that she needed health insurance benefits that she had been promised as an employee.

48. On or around May 26, 2022, Rachel Foley ("Foley"), an individual female employed by Defendants as Internet Sales Manager, became Ms. Johnson's new supervisor.

49. Foley had supervisory authority over Ms. Johnson, including the power to hire, fire, demote, and promote Ms. Johnson.

50. On or around June 28, 2022, Ms. Johnson's physician advised her that she needed to reduce her stress levels, attend more frequent check-ups because she was experiencing swelling and high blood pressure, and begin working remotely as soon as possible to eliminate her two-hour commute.

51. Following this appointment with her doctor, Ms. Johnson followed up with Foley in-person to inquire about the status of her pregnancy accommodation and the status of her health insurance benefits. In response, Foley stated she would investigate both matters.

52.     On or around July 1, 2022, Ms. Johnson sent an email message to Foley and Hodges to follow up again regarding her pregnancy accommodation and the status of her health insurance benefits.

53.     That same day, Foley spoke with Ms. Johnson in-person and advised her that she was still investigating both issues. Foley further stated that she had recommended to Defendants' management that Ms. Johnson receive an increase in base pay and her commission pay.

54.     On or around July 7, 2022, Ms. Johnson learned that Foley was no longer employed by Defendants. Ms. Johnson's co-worker informed Ms. Johnson that Foley's termination was related to a disagreement between Foley and Defendants' management regarding the pay and benefits given to Foley's team.

55.     On or around July 8, 2022. Ms. Johnson followed up with Hodges again via email regarding her pregnancy accommodation and health insurance benefits.

56.     That same day, Hodges spoke with Ms. Johnson in-person. Hodges informed Ms. Johnson that it was a "company oversight" that Ms. Johnson had not been provided the paperwork for her to enroll in Defendants' health insurance.

57.     Hodges further stated that if Ms. Johnson wanted to receive health insurance benefits she could either: (1) pay all of the past monthly insurance

premiums, in full, to have the insurance backdated, or (2) wait until the next time an insurance representative visited the dealership.

58.    Hodges informed Ms. Johnson that the past monthly insurance premiums would be several hundred dollars.

59.    Ms. Johnson had been paying out-of-pocket for her OB/GYN visits since starting work for the Defendants and could not afford to pay the insurance premiums in full.

60.    As a result, Ms. Johnson was left with no choice but to continue working with no health insurance benefits and wait for the unspecified date when an insurance representative would visit the dealership.

61.    On or around July 12, 2022, Ms. Johnson had a visit with her physician. Ms. Johnson's physician reiterated the concerns about Ms. Johnson's blood pressure and the need for her to reduce her stress level and eliminate her long commute.

62.    Ms. Johnson's physician also emphasized the importance of Ms. Johnson working remotely so that she would be closer to her physician's office and the hospital.

63.    On or around July 13, 2022, Ms. Johnson was asked to meet with Hodges and David Dlugokecki ("Dlugokecki"), an individual male employed by Defendants as General Manager.

10

64.     In the meeting, Hodges and Dlugokecki informed Ms. Johnson that her pregnancy accommodation to work remotely had been approved, and that Ms. Johnson could begin working remotely with two weeks' notice.

65.     Hodges and Dlugokecki further stated that Ms. Johnson would be allowed to work fully remotely at the conclusion of her six weeks of unpaid maternity leave.

66.     On or around July 15, 2022, Ms. Johnson was asked to meet with Clough and an individual female Ms. Johnson had never met before.

67.     Clough started the meeting by praising Ms. Johnson's work performance and stating that Ms. Johnson had never received any complaints. Clough's praise of Ms. Johnson's work performance led her to believe she may be receiving a raise from Defendants.

68.     Clough then proceeded to inform Ms. Johnson that she was being terminated because Defendants were going in a different direction. Specifically, Clough stated that Defendants would begin requiring salespersons to make their own appointments.

69.     Ms. Johnson was confused by Clough's justification, as Defendants had hired two new female employees on or around July 11, 2022, to schedule appointments for the salespersons.

70.     Clough then asked Ms. Johnson to sign a document that was folded over on the desk so that only the signature lines were visible on the document.

71.     Ms. Johnson asked to read the document before signing it. In response, Clough stated that Ms. Johnson did not need to read it and instructed her to sign the document.

72.     Ms. Johnson felt extremely pressured and initially began to sign the document, but quickly stopped before completing her signature because she was not being given an opportunity to review the agreement.

73.     Rather than allowing Ms. Johnson to read the document, Clough told Ms. Johnson to leave. Ms. Johnson was then forced to clean out her desk and exit the building.

74.     On or around July 15, 2022, Ms. Johnson was unlawfully terminated by Defendants.

75.     Defendants unlawfully discriminated against Ms. Johnson on the on the basis of her pregnancy and retaliated against Ms. Johnson for opposing the Defendants' unlawful employment practices.

76.     Defendants terminated Ms. Johnson to avoid paying her health insurance benefits and because Ms. Johnson refused to be misclassified as an independent contractor.

77.     Ms. Johnson was denied meaningful access to any administrative remedies related to her health insurance benefits, as she was not provided with any resources or information related to the benefit plan.

78.     The above-described conduct are just some examples of the discriminatory conduct and retaliation to which Defendants subjected Ms. Johnson.

79.     Defendants' discrimination, interference, and retaliation, against Ms. Johnson was in violation of Title VII and ERISA.

80.     Ms. Johnson claims a continuous practice of discrimination and claims continuing violations and makes all claims herein under the continuing violations doctrine.

81.     At all relevant times, Defendants' employees were acting as agents of Defendants in their discriminatory, retaliatory, and unlawful treatment of Ms. Johnson.

82.     At all relevant times, Defendants acted with deliberate indifference to the discriminatory treatment, hostile work environment, and retaliation complained of herein.

83.     As a result of Defendants' actions, Ms. Johnson felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

84.     As a result of the acts and conduct complained herein, Ms. Johnson has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Ms. Johnson has also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-

pecuniary losses. Ms. Johnson has further experienced severe emotional and physical distress.

85.     Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, so as to support and justify an award of punitive damages against Defendants.

86.     Defendants are either directly or vicariously responsible for the unlawful facts and conduct complained of herein.

### CAUSES OF ACTION
### COUNT I
### 42 U.S.C. § 2000e-2
### *Sex Discrimination*
### (Plaintiff as Against all Defendants)

87.     Plaintiff reincorporates the factual allegations in Paragraphs 22 through 86.

88.     Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

89.     Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment

practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

90.    Title VII defines "because of sex" and "on the basis of sex" to include discrimination on the basis of "pregnancy, childbirth, or related medical conditions" and requires that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." 42 U.S.C. § 2000e(k).

91.    Ms. Johnson was a pregnant woman and was therefore a protected class member.

92.    The elements of a prima facie case of disparate treatment are flexible and are tailored on a case-by-case basis to differing factual circumstances.

93.    Defendants subjected Ms. Johnson to discriminatory treatment on the basis of her sex. Defendants' discriminatory treatment included, but was not limited to, failing to accommodate Ms. Johnson's pregnancy and pregnancy-related conditions, interfering with Ms. Johnson's access to health insurance benefits, denying Ms. Johnson the same privileges and benefits afforded to non-pregnant employees, attempting to wrongfully misclassify Ms. Johnson as an independent contractor, and unlawfully terminating Ms. Johnson.

94.   Defendants targeted Ms. Johnson because she was a pregnant female and because she attempted to take maternity leave. No similarly situated non-pregnant employees endured the discriminatory conduct that Ms. Johnson was forced to endure.

95.   The discriminatory actions of the Defendants against Ms. Johnson, as described and set forth above, constitute an adverse employment action for purposes of the Title VII.  In subjecting Ms. Johnson to adverse employment actions, the Defendants intentionally discriminated against Ms. Johnson with respect to the compensation, terms, conditions, or privileges of her employment.

96.   As a direct and proximate result of the Defendants' intentional discriminatory conduct in violation of Title VII, Ms. Johnson has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Johnson has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Johnson accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

97.   The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Johnson' rights under Title VII,

warranting the imposition of punitive damages, in addition to compensatory damages.

98.    The conduct of the Defendants deprived Ms. Johnson of her statutory rights guaranteed under Title VII.

99.    Ms. Johnson further requests that her attorney's fees and costs be awarded as permitted by law.

**COUNT II**
**42 U.S.C. § 2000e-3**
*Retaliation*
**(Plaintiff as Against all Defendants)**

100.    Plaintiff reincorporates the factual allegations in Paragraphs 22 through 86.

101.    Title VII prohibits retaliation in any manner against a person who has opposed a discriminatory practice, or who has participated in any investigation, proceeding or hearing related to an unlawful discriminatory practice. 42 U.S.C. § 2000e-3(a).

102.    Ms. Johnson was a pregnant woman and was therefore a protected class member.

103.    Ms. Johnson engaged in a protected activity when she opposed the Defendants' unlawful discriminatory conduct on the basis of her sex and pregnancy.

104.   In response to Ms. Johnson opposing the discriminatory conduct and asserting her right to enjoy the same employment benefits as every other employee, the Defendants retaliated against Ms. Johnson.

105.   Defendants retaliated against Ms. Johnson by engaging in conduct, including but not limited to, interfering with Ms. Johnson's access to health insurance benefits, denying Ms. Johnson the same privileges and benefits afforded to non-pregnant employees, attempting to wrongfully misclassify Ms. Johnson as an independent contractor, and unlawfully terminating Ms. Johnson.

106.   The Defendants took the above-mentioned materially adverse actions, among others, against Ms. Johnson because of her protected activities.

107.   Any reasonable employee in Ms. Johnson' position would be dissuaded from opposing discriminatory conduct if they knew that they would be subjected to the kind of treatment that Ms. Johnson was forced to endure.

108.   The Defendants' alleged bases for its adverse employment actions against Ms. Johnson are pretextual and have been asserted only to cover up the retaliatory nature of Defendants' conduct.

109.   As a direct and proximate result of the Defendants' retaliatory conduct in violation of the Title VII, Ms. Johnson has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits.  Ms. Johnson has also suffered and will continue

to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages Ms. Johnson accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

110.   The Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of the Ms. Johnson' rights under Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

111.   The conduct of the Defendants deprived Ms. Johnson of her statutory rights guaranteed under Title VII.

112.   Ms. Johnson further requests that her attorney's fees and costs be awarded as permitted by law.

<u>**COUNT III**</u>
**29 U.S.C. § 1140**
***Interference***
**(Plaintiff as Against all Defendants)**

113.   Plaintiff reincorporates the factual allegations in Paragraphs 22 through 86.

114.   ERISA makes it unlawful to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any right to which a such participant may become entitled. 29 U.S.C. § 1140.

115.   Defendants provided Ms. Johnson with an employee welfare plan as defined by 29 U.S.C. § 1002(a), specifically, health insurance.

116.   Ms. Johnson was qualified for her position based on her education and work experience.

117.   Ms. Johnson was entitled to protection under ERISA as a participant and beneficiary in an ERISA plan.

118.   Defendants specifically intended to interfere with Ms. Johnson's ERISA rights when Defendants prevented Ms. Johnson from enrolling in the ERISA-covered benefit plan, delayed Ms. Johnson's access to benefits under the plan, failed to take adequate remedial measures after learning of Ms. Johnson's improper denial of access to the plan, and unlawfully terminated Ms. Johnson before she could exercise her benefits.

119.   Defendants had knowledge that Ms. Johnson had refused to be classified as a 1099 independent contractor and engaged in the above-mentioned conduct to prevent Ms. Johnson from exercising her benefits under the ERISA-covered employee benefit plan.

120.   Defendants had knowledge that Ms. Johnson would exercise her health benefits to pay for the medical costs associated with her pregnancy.

121.   Defendants interfered with Plaintiff's rights to benefits under the ERISA-covered employee benefit plan, in whole or in part, because Defendants did not wish to bear the costs of Plaintiff's healthcare.

122.   The circumstances of Defendants' interference with Ms. Johnson's protected rights under ERISA give rise to an inference of discrimination.

123.   Defendants' conduct was intentional and willful.

124.   As a direct and proximate result of the Defendants' interference in violation of ERISA, Ms. Johnson has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay), lost benefits, and medical expenses.  Ms. Johnson accordingly demands any and all relief available to her, including but not limited, lost economic damages, lost wages, back pay, front pay, the value and/or economic impact of lost benefits, reinstatement, compensatory damages, and interest.

125.  The conduct of the Defendants deprived Ms. Johnson of her statutory rights guaranteed under ERISA.

126.   Ms. Johnson further requests that her attorney's fees and costs be awarded as permitted by law.

## COUNT IV
### 29 U.S.C. § 1132(a)(3)
### *Breach of Fiduciary Duty*
### (Plaintiff as Against all Defendants)

127.   Ms. Johnson reincorporates the factual allegations in Paragraphs 22 through 86.

128.   ERISA provides, in pertinent part, that a participant or beneficiary may bring an action (A) to enjoin any act or practice which violates

any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3).

129.   ERISA requires that a fiduciary discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. 29 U.S.C. § 1104(a)(1).

130.   Defendants provided Ms. Johnson with an employee welfare plan as defined by 29 U.S.C. § 1002(a), specifically, health insurance.

131.   Ms. Johnson was entitled to protection under ERISA as a participant and beneficiary in an ERISA plan.

132.   Defendants were entities exercising discretionary authority or discretionary control over Ms. Johnson's ERISA-covered benefit plan, and therefore qualify as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

133.   Defendants breached one or more fiduciary duties by engaging in conduct including, but not limited to, failing to disclose and inform Ms. Johnson of her rights and benefits under the ERISA-covered plan, failing to convey complete and accurate information regarding the plan to Ms. Johnson,

failing to allow Ms. Johnson to enroll in the plan, delaying Ms. Johnson's access to benefits under the plan, failing to take adequate remedial measures after learning of Ms. Johnson's improper denial of access to the plan, and unlawfully terminating Ms. Johnson before she could exercise her benefits under the plan.

134.   Defendants' conduct was intentional and willful.

135.   Plaintiff is entitled to equitable or remedial relief as the court may deem appropriate for the Defendants' breaches.

136.   As a direct and proximate result of the Defendants' wrongful conduct in violation of ERISA, Ms. Johnson has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay), lost benefits, and medical expenses.  Ms. Johnson accordingly demands any and all relief available to her, including but not limited, lost economic damages, lost wages, back pay, front pay, the value and/or economic impact of lost benefits, reinstatement, compensatory damages, and interest.

137.  The conduct of the Defendants deprived Ms. Johnson of her statutory rights guaranteed under ERISA.

138.   Ms. Johnson further requests that her attorney's fees and costs be awarded as permitted by law.

## **JURY DEMAND**

Plaintiff hereby demands a jury trial on all issues to be tried.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff respectfully requests this Court enter judgment against the Defendants for all damages suffered by the Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, liquidated damages, statutory damages, compensatory damages, emotional distress damages, punitive damages, interest, attorney's fees and costs, disbursements of action, and any other remedies (monetary and/or equitable) allowable by law as a result of the Defendants' conduct in violation of  Title VII and ERISA.

Dated:  Miami, Florida    **DEREK SMITH LAW GROUP, PLLC**
   January 16, 2024,   *Counsel for Plaintiff*

            /s/ Kyle T. MacDonald
            Kyle T. MacDonald, Esq.
            Florida Bar No.: 1038749
            Derek Smith Law Group, PLLC
            520 Brickell Key Drive, Suite O-301
            Miami, FL 33131
            Tel: (305) 946-1884
            Fax: (305) 503-6741
            Kyle@dereksmithlaw.com